## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STUART T. GUTTMAN, M.D.

      **Plaintiff,**

vs.                                   **No. CIV 03-463 LCS**

G.T.S. KHALSA, LIVINGSTON PARSONS, AND
THE STATE OF NEW MEXICO

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment,

filed on May 28, 2003.  The Court, acting upon consent and designation pursuant to 28 U.S.C. §

636, and  having reviewed the Motion and considered the submissions of counsel, relevant

authorities, and being otherwise fully advised, finds that this Motion is well-taken and should be

**GRANTED**.

### I.      Background.

This case arises out of the revocation of Plaintiff's medical license by the New Mexico

Board of Medical Examiners ("Board").  Plaintiff was granted a stipulated license to practice

medicine in New Mexico on May 20, 1993.  (Def. Ex. A.)  The license was granted with

stipulations due to Plaintiff's history of mental illness involving depression and post traumatic

stress disorder ("PTSD").  (*Id.*)  The stipulations on Plaintiff's license were lifted by the Board on

or about May 19, 1995.  (Compl. ¶ 9.)  On December 28, 1999, the Board directed Plaintiff to

meet with an Impaired Physician Examining Committee  based on a number of complaints

regarding Plaintiff.  (Def. Ex. D).  Plaintiff met with the examining committee on January 10,

2000 in Albuquerque, New Mexico.  On or about March 7, 2000, Plaintiff received a Notice of

Contemplated Action and an Order of Summary Suspension from the Board based on Plaintiff's

mental illness, allegations of false statements to the Board and inappropriate behavior with

patients and hospital staff.  ( Def. Ex. B, C).  Plaintiff appeared with counsel at an administrative

hearing before the Board from October 23-25, 2000.  The purpose of this hearing was to

determine whether Plaintiff's license to practice medicine in the State of New Mexico should be

revoked.  Defendant Parsons acted as administrative hearing officer at this hearing and Defendant

Khalsa acted as administrative prosecutor for the Board.  The Board ordered that Plaintiff's

license to practice medicine be revoked on February 28, 2001 based on dishonest statements made

to the Board by Plaintiff and on findings of abusive and disruptive behavior by Plaintiff towards

colleagues, hospital staff and patients.  (Def. Ex. D).  The Board further found that Plaintiff had a

history of major depression, PTSD, and an underlying mixed personality disorder, that prior

therapeutic treatment and prior intervention by Plaintiff's employers had been ineffective in

changing Plaintiff's behavior, and that Plaintiff could not be effectively monitored with respect to

his disruptive behavior.  (*Id.*).

Plaintiff filed an appeal of the Board's decision in the Seventh Judicial District Court of

New Mexico alleging that the Board's decision was not supported by substantial evidence, that

the decision of the Board was not in accordance with applicable law, that the decision was

arbitrary, capricious and an abuse of discretion and that the decision did not comport with the

requirements of Title II of the Americans with Disabilities Act ("ADA") (Def. Ex. E).

On January 30, 2003, the State Court issued an Order affirming the Board's revocation of

Plaintiff's license.  The court found that the Board's decision was based on substantial evidence,

was within the Board's authority and based upon the law, and was not arbitrary, capricious or

fraudulent.  (Def. Ex. F.)  The court further found that, because Plaintiff had not raised the

allegation of ADA violations before the Board, this issue was not preserved for appeal.  (*Id.*)  As

such, Plaintiff's ADA claims were not considered by the court.  (Def. Ex. F).   Plaintiff's Motion

for Reconsideration to the New Mexico Court of Appeals and petition for *certiorari* to the New

Mexico Supreme Court were denied.  (Def. Ex. G, H.)  Plaintiff has exhausted all avenues

available to him in state court pursuant to 28-1-13 NMSA 1978.

Defendants argue that they are entitled to summary judgment because Plaintiff has not

stated a claim for violation of his Procedural Due Process rights under 42 U.S.C. § 1983 or for

violations of Title II of the ADA and because jurisdiction is improper before this Court.

## II.     Standard

A motion for summary judgment may be granted only when "there is no genuine issue as

to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P 56(c).  Summary judgment is proper when the pleadings, depositions, answers to

interrogatories and admissions on file, as well as any affidavits "show that there is no genuine

issue as to any material fact."  *Id.*  When applying this standard, the Court examines the record

and reasonable inferences in the light most favorable to the non-moving party.  *See Simms v.*

*Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326

(10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any

material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial." *Matsushita Electric indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289

(1968)).  The movant's initial burden may be discharged by showing there is an absence of

evidence to support the non-moving party's case.  *See Celotex v. Catrett*, 477 U.S. 317, 323

(1986).  Once the movant meets its burden, the burden shifts to the non-moving party to

demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F.3d

1193, 1201 (10th Cir. 1999).

## III.    Analysis

Plaintiff brings this action under Title II of the Americans with Disabilities Act ("ADA")

and under 42 U.S.C. § 1983.  Defendants contend they are entitled to summary judgment on the

grounds that this Court lacks subject matter jurisdiction over Plaintiff's claims and that the

immunity of Defendants Khalsa and Parsons and the State of New Mexico is well established

under Tenth Circuit law.

### a. *Rooker-Feldman* as a Bar to Jurisdiction

Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's claims

under the *Rooker-Feldman* Doctrine.[1]  Under *Rooker-Feldman*, a party who loses in a state court

proceeding is barred " 'from seeking what in substance would be appellate review of the state

judgment in a United States district court, based on the losing party's claim that the state

judgment itself violates the loser's federal rights.' " *Kiowa Indian Tribe of Okla. v. Hoover*, 150

F.3d 1163, 1169 (10th Cir. 1998) (quoting *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06

---

[1]*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust*,
263 U.S. 413, 416 (1923).

(1994)).  Federal review of state court judgments can be obtained only in the United States

Supreme Court.  28 U.S.C. § 1257.  The *Rooker-Feldman* doctrine therefore prohibits a lower

federal court from considering claims actually decided by a state court and claims "inextricably

intertwined" with a prior state-court judgment.  *See Kenmen Engineering v. City of Union*, 314

F.3d 468, 473 (10th Cir. 2002).

Plaintiff asserts that *Rooker-Feldman* does not apply to the present case because Plaintiff

did not have a full and fair opportunity to litigate his ADA claims in the prior state proceeding.

However, in *Kenman*, the Tenth Circuit ruled that application of the *Rooker-Feldman* doctrine

was appropriate despite the fact that the federal court plaintiff had no opportunity to litigate a

particular claim  in a state court proceeding.  *Id.* at 478.  *Rooker-Feldman* bars any suit seeking to

undo a prior state court judgment, regardless of whether the state proceeding afforded Plaintiff a

full and fair opportunity to litigate his claims.  *Facio v.  Jones*, 929 F.2d 541, 544 (10th Cir.

1991).  The fact that the state court declined to hear Dr. Guttman's ADA claims does not provide

this Court with jurisdiction to hear those claims.

Plaintiff also contends that, because the State court refused to hear Dr. Guttman's ADA

claims, these claims are not "inextricably intertwined" with that court's judgment within the

meaning of *Rooker-Feldman* and therefore can be raised by Plaintiff in this Court.  This

contention must be rejected.  The Supreme Court has identified two categories of cases that fall

outside of *Rooker-Feldman's* "inextricably intertwined" formula.  First, a party may bring a

general constitutional challenge to a state law, provided that: 1) the Party does not request that

the federal court upset a prior state-court judgment applying that law against the party, *Feldman*

*v. District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). and 2) the

prior state-court judgment did not actually decide that the state law at issue was facially

constitutional. *Kenman* at 476. (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16

(1923)).  Second, a party may challenge state procedures for enforcement of a judgment where

consideration of the underlying state-court decision is not required.  *Pennzoil Co. v. Texaco, Inc.*,

481 U.S. 1, 26 (1987).

The present action does not fall within either of these exceptions to the *Rooker-Feldman*

jurisdictional bar.  Although Plaintiff contends in his Surreply that he is not intending a review of

the state court decision, Plaintiff seeks prospective  injunctive relief and damages under the ADA

which requires a review of the state court decision.  It is clear that Plaintiff's injury resulted from

the state-court judgment, that his complaint in this Court seeks to upset that judgment and that

the resolution of Plaintiff's federal claims necessarily requires consideration of the underlying

state-court decision.  *Kenman*, 314 F.3d at 476.

Because Plaintiff's claims fall directly within the parameters of *Rooker-Feldman*. these

claims are not reviewable by this Court.  However, as discussed *infra*, Plaintiff would be entitled

to no relief even if this Court had jurisdiction to consider his claim.

**b.  Plaintiff's Claims against Defendants Parsons and Khalsa**

Plaintiff alleges that Defendants possessed a bad faith intent to discriminate against him in

violation of 42 U.S.C. § 1983 and Title II of the ADA and that Defendants Khalsa and Parsons

singled Plaintiff out for discrimination because of a knowledge of Plaintiff's mental illness.

Plaintiff has not presented any evidence tending to prove this contention.

Plaintiff argues that he may appropriately bring suit against state officials, even if they

claim to be acting under state law, for conduct by the officials that constitutes an ongoing

violation of federal law.  For this proposition, Plaintiff cites *Elephant Butte Irrigation District of New Mexico v. Dep't of the Interior*, 160 F.3d 602, 609 (10th Cir. 1998).  Plaintiff's reliance on this authority is misplaced.  In *Elephant Butte*, the acts of state officials constituted a conflict with federal law at the inception of the state action in question.  *Id.*  In the present case, officials Khalsa and Parsons were acting pursuant to New Mexico state law.  However, Plaintiff does not argue that New Mexico state law is invalid, nor does Plaintiff claim that the State of New Mexico was authorizing its officials to violate federal law.  Indeed, Plaintiff appears to make no claim at all regarding the validity of New Mexico state law. Plaintiff's cited authority is therefore inapplicable to the case at bar.

Plaintiff further contends that Defendant Khalsa is not entitled to immunity because he was involved in administrative duties and investigatory work, which does not fall within the scope of immunity traditionally afforded to officials acting as prosecutors.  Plaintiff also argues that Defendants Khalsa and Parsons acted in bad faith and, as such, are not entitled to immunity from suit.  For this contention, Plaintiff cites *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  Plaintiff's reliance on this authority is misplaced.

The Supreme Court in *Buckley* declined to withhold all immunity from prosecutors acting in an investigative or administrative capacity.  *Id.* at 265.  Instead, the Court held that these individuals were entitled to qualified immunity.  *Id.*  The Supreme Court further held that acts undertaken by a prosecutor in preparation for the  initiation of judicial proceedings or trial are entitled to absolute, rather than qualified, immunity.  *Id.* at 273.  The actions of Defendants Khalsa and Parsons fall within the Supreme Court's provisions for absolute immunity and as such, the acts of Khalsa and Parsons are not amenable to suit by Plaintiff.

The Tenth Circuit has previously dealt with agency adjudications in the context of medical licensing and determined that, because such agencies perform functions analogous to a court of law, agency members are entitled to absolute immunity from suit. *Horowitz v. State Board of Medical Examiners*, 822 F.2d 1508 (10th Cir. 1987). Traditionally, administrative officials have been afforded absolute immunity when performing functions analogous to those of judges and prosecutors. *Butz v. Economou*, 438 U.S. 478 (1982). Absolute immunity is to be granted in those situations where, 1) the officials' functions are similar to those involved in the judicial process, 2) the officials' actions are likely to result in damages lawsuits by disappointed parties, and 3) there are sufficient safeguards in the regulatory framework to control unconstitutional conduct. *Id.* These requirements are satisfied in the present case. At the agency hearing, the functions of Defendants Khalsa and Parsons were clearly similar to those involved in the judicial process. The actions of Khalsa and Parsons did in fact result in a suit for damages and injunctive relief by the Plaintiff and there were sufficient safeguards in the regulatory framework, including an appeal of the Board's decision in state court, to control any potential unconstitutional conduct by Defendants.

The Tenth Circuit has recognized a strong public policy in favor of affording absolute immunity from damages liability under 42 U.S.C. § 1983 to agency officials who perform functions that are adjudicatory and/or prosecutorial in nature. *Kenman*, 822 F.2d at 1515. The Court noted that there is a strong need to insure that individual Board members perform functions for the public good free from harassment or intimidation. *Id.* In responding to a complaint closely analogous to that now before this court, the Court explained, "It is important to insulate Board members from political influences in meeting their adjudicatory responsibilities in the

adversarial setting involving licensure to practice medicine." *Id.* Under Tenth Circuit law, public

policy requires that officials serving in such an adjudicatory capacity be exempted from personal

liability. *Id.*

### c.  Plaintiff's Claims against Defendant State of New Mexico

Plaintiff next argues that the State of New Mexico is a proper defendant under his ADA

and Procedural Due Process claims. With regard to Plaintiff's claims under, 42 U.S.C. § 1983,

the State of New Mexico is not a proper Defendant. *Monell v. Dep't of Social Services*, 436 U.S.

658, 691 (1978). Regarding Plaintiff's ADA claims, Plaintiff contends he has brought a claim

under Title II of the ADA, for which sovereign immunity has been either abrogated or waived by

the State of New Mexico. This contention fails for several reasons.

The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not

be sued by private individuals in federal court. *Board of Trustees of the University of Alabama v.*

*Garrett*, 531 U.S. 356, 363 (2001). Congress may nevertheless abrogate the Eleventh

Amendment guarantee pursuant to Section 5 of the Fourteenth Amendment, which grants to

Congress the power to enforce the substantive guarantees contained in Section I of the

Amendment through the enactment of appropriate legislation. *Id.* at 364-65.

Plaintiff correctly points out that the Supreme Court declined to decide whether Congress

had abrogated the sovereign immunity of states under Title II of the ADA. *Id.* at 360. However,

the Tenth Circuit has dealt with this issue with respect to Title II and found that Title II is not a

valid abrogation of the states' Eleventh Amendment immunity. *Thompson v. Colorado*, 278 F.3d

1020, 1034 (10th Cir. 2001). Therefore, under Tenth Circuit law, Plaintiff cannot join the State

of New Mexico in a claim under Title II of the ADA.

Even without the Tenth Circuit's guidance on Title II, it is still apparent that the State of New Mexico has not chosen to abrogate its immunity under Title II of the ADA. Only unequivocal actions by a state will support a determination that the state has waived sovereign immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Whether a state's attorney general has waived sovereign immunity on behalf of the state depends on two questions: 1) whether the action taken by the attorney general is sufficient to constitute a waiver, and 2) whether the attorney general has the authority under state law to waive the state's sovereign immunity. *See, AFSCME v. Corrections Dep't of New Mexico*, 783 F. Supp. 1320, 1327 (D.N.M. 1992).

The Plaintiff has made no showing that the attorney general of New Mexico unequivocally intended to waive the State's sovereign immunity. Only unequivocal expressions by a State will support a waiver of immunity. *Id.* Furthermore, Plaintiff has made no showing that the Attorney General of New Mexico has any authority to waive the State's sovereign immunity. Section 8-5-2 NMSA (1978 Comp.), which specifies the powers of the Attorney General, does not expressly confer on the Attorney General the authority to waive Eleventh Amendment immunity. Plaintiff therefore has failed to make out a case that either Congress or the State of New Mexico intended to waive the state's sovereign immunity with respect to Title II of the ADA and Plaintiff's claims must therefore fail.[2]

---

[2]Defendant further contends that Plaintiff has not satisfied the administrative requirements for filing suit under the ADA. However,Title II of the ADA does not require Plaintiff to exhaust all remedies before bringing suit. *Davoll v. Webb*, 194 F.3d 1116, 1124 (10th Cir. 1999). Although Plaintiff has satisfied the requirements for bringing suit under Title II of the ADA, his claims must fail because Defendants are entitled to immunity.

**IV.     Conclusion**

Upon review of the evidence presented on this Motion for Summary Judgment, this Court

has determined that this it lacks jurisdiction to hear Plaintiff's claims under *Rooker-Feldman*.

Furthermore, all named Defendants are entitled to absolute immunity as to Plaintiff's claims under

42 U.S.C. § 1983 and Title II of the ADA.  Accordingly, Defendants' Motion for Summary

Judgment, filed on May 28, 2003, shall be **GRANTED**.

Defendant's Motion for Leave to file a Surreply and Memorandum in support (*Doc. 17*) is

hereby **DENIED AS MOOT**.

**A SUMMARY JUDGMENT CONSISTENT WITH THIS OPINION SHALL**

**ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**