IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STUART T. GUTTMAN, M.D.,
    Plaintiff,

v.                              CV 03-0463 LCS/KBM

G.T.S. KHALSA, LIVINGSTON PARSONS,
and THE STATE OF NEW MEXICO,
    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss filed on July 12, 2006. (Doc. 29.) Pursuant to 28 U.S.C. § 636(c) and Federal Rules of Civil Procedure 73(b), the parties consented to have me serve as the presiding judge and enter final judgment. (*See* Docs. 2, 7.) After having meticulously considered the motion, briefs, and applicable law, the motion will be **DENIED IN PART, and GRANTED IN PART,** and the remainder of the motion will be **RESERVED** for decision after oral argument.

### I.    PROCEDURAL BACKGROUND

Plaintiff relies on these facts which he averred: This case arises out of the revocation of Plaintiff's medical license by the New Mexico Board of Medical Examiners (the "Board"). Plaintiff was originally granted a stipulated license to practice medicine in New Mexico on May 20, 1993. (Doc. 28 at 2.) The license was granted with stipulations due to Plaintiff's history of mental illness involving depression and post traumatic stress disorder ("PTSD"). (*Id.*) The Board lifted these stipulations on May 19, 1995. (*Id.*) On December 28, 1999, Plaintiff appeared before the Board's Impaired Physician Examining Committee, because the Board stated it had reason to believe Plaintiff was impaired. (*Id.*) The Board suspended Plaintiff's license to practice medicine on March 7, 2000. (*Id.* at 4.) As stated in the Notice of Contemplated Action, the Board's

reasons for the suspension were twofold: Plaintiff had been dishonest with the Examining Committee, and Plaintiff could not safely practice medicine due to his history of mental illness. (*Id.*)

The Board held an administrative hearing from October 23 - 25, 2000 to determine whether Plaintiff's license should be revoked. (*Id.*) Plaintiff appeared at the hearing, but alleges that he was not given proper notice of the subject of the inquiry and was not given a fair hearing due to bias from and deliberate withholding of information by Defendants Khalsa and Parsons. (*Id.* at 4, 9-11.) Defendant Parsons acted as administrative hearing officer and Defendant Khalsa acted as administrative prosecutor for the Board. On February 28, 2001, the Board revoked Plaintiff's license and found that Plaintiff has an underlying mixed personality disorder, a history of major depression, and PTSD. (*Id.* at 4-5.) Plaintiff alleges that the Board discriminated against him because of his disability and refused to provide him with reasonable accommodations, even though the Board relied on psychological reports that were over five years old and varied greatly in their diagnoses. (*Id.* at 6-7.) Plaintiff further alleges that the Board's actions were also in retaliation for comments made by Plaintiff regarding other health care professionals. (*Id.* at 12.)

Plaintiff's claims have been before this Court previously. I granted summary judgment in 2003, holding that the Court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine, and in the alternative, that Defendants Khalsa and Parsons were protected against suit by absolute immunity and that the state was entitled to sovereign immunity. (Doc. 18.) Plaintiff appealed, and the Tenth Circuit affirmed my decision. *Guttman v. Khalsa*, 401 F.3d 1170 (10th Cir. 2005). The Tenth Circuit's decision was vacated and this case remanded in light of the United States Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

U.S. 280 (2005). The Tenth Circuit recently held that "[t]he district court properly granted absolute immunity for Parsons and Khalsa[,]" but remanded for further proceedings with respect to the issue of "whether Title II validly abrogates state sovereign immunity as applied to the class of conduct at issue in this case." *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) (*Guttman*). Plaintiff subsequently filed an amended complaint. (Doc. 28.) Defendants now bring this motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Doc. 29.)

## II.  STANDARD OF REVIEW

In considering Defendants' Motion to Dismiss under FED. R. CIV. P. 12(b)(6), I must assume as true all well-pleaded facts and must draw all reasonable inferences in favor of the Plaintiffs. *See, e. g., Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). I may not dismiss Plaintiff's cause of action for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks and citation omitted). "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.* (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). "It is not, however, proper to assume that [Plaintiff] can prove facts that [he] has not alleged or that the defendants have violated the . . . laws in ways [Plaintiff has not] alleged." *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F. 2d 1357, 1359 (10th Cir. 1989) (quoting

3

*Morgan v. City of Rawlins*, 792 F. 2d 975, 978 (10th Cir. 1986)).

## III. DEFENDANTS' MOTION WILL BE GRANTED IN PART AND DENIED IN PART.

The Tenth Circuit remanded this case with specific instructions for the Court.[1] *Guttman*, 446 F.3d at 1035-36. The issues the Tenth Circuit raised, however, are more appropriate for decision at a later stage, because in my view, a decision will require some development of the facts.[2] In the first section of this opinion, I find that: (1) Plaintiff has alleged sufficient facts to state a claim under the ADA; (2) Defendants Khalsa and Parsons are entitled to absolute immunity; and (3) Plaintiff's claims for "false data bank report" and defamation under § 1983 are dismissed.

### A.  Plaintiff Has Asserted Sufficient Facts to Demonstrate a Protected Disability.

Plaintiff has alleged sufficient information for his ADA claim to survive Defendants' motion to dismiss. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). All that a complaint must do is "give the defendant fair notice of the claims against him"; a plaintiff is not required "to have every legal theory or fact developed in detail before the complaint is filed and the parties

---

[1] This Court is to address: (1) whether Plaintiff "properly alleged violations of Title II"; (2) whether Plaintiff's "claims are otherwise barred because they are precluded by res judicata or collateral estoppel"; (3) if Plaintiff "did state a valid claim under Title II, . . . whether Congress abrogated sovereign immunity as applied to the class of conduct at issue in this case"; (4) if Plaintiff's Title II claim "is not also an independent constitutional violation, . . . whether Title II abrogated sovereign immunity for an as applied challenge." *Guttman*, 446 F.3d at 1035-36.

[2] The Eighth Circuit has already decided a case using the analysis described by the Tenth Circuit. *See Klingler v. Dir., Dep't of Revenue, State of Mo.*, 455 F.3d 888 (8th Cir. 2006). In *Klingler*, the court asked, in deciding whether Congress abrogated sovereign immunity, "whether the provisions of Title II are 'congruent and proportional' to the rights that it seeks to enforce." *Id.* at 896. Here, that question cannot be answered without further discovery.

4

have opportunity for discovery." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1215, 1219). In the context of a motion pursuant to Rule 12(b)(6), dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton*, 173 F.3d at 1236 (internal quotation marks and citation omitted).

> To state a claim under the ADA, Plaintiff must allege sufficient facts to demonstrate:
>
> "(1) that he . . . is a qualified individual with a disability;
> (2) that he . . . was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
> (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) (quoting *Tyler v. City of Manhattan*, 849 F.Supp. 1429, 1439 (D. Kan. 1994) (internal citation omitted in original)). Plaintiff has met this standard. Plaintiff asserts that he is disabled within the meaning of the ADA and otherwise qualified as a physician.[3] (Doc. 28 at 5.) Specifically, Plaintiff refers to his disability as "a history of mental illness through depression and low grade Post Traumatic Stress Disorder . . . ." (*Id.* at 2.) To support his claim, Plaintiff alleges that: (1) Plaintiff's 1993 license to practice medicine had stipulations because of his history of mental illness; (2) the Examining Committee of the Board stated that it had reason to believe Plaintiff was impaired; and (3) the Board found that Plaintiff has an underlying mixed personality disorder and a history of major depression and

---

[3] The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

5

PTSD. (*Id.* at 2, 5.) "Depression is among the mental impairments that may rise to the level of a protected disability." *Krocka v. Riegler*, 958 F.Supp. 1333, 1340 (N.D. Ill. 1997) (citations omitted); *see also Kourianos v. Smith's Food & Drug Ctrs., Inc.*, No. 02-4094, 2003 WL 21008840, (10th Cir. May 6, 2003). PTSD may also be protected if it meets the definition of a disability. *See Humbles v. Principi*, Doc. No. 04-1218, 2005 WL 1581257, at *2 (10th Cir. July 7, 2005). The foregoing allegations satisfy Plaintiff's burden to demonstrate the first element of a claim under the ADA.

Plaintiff has also satisfied the second and third elements. The Board is a "public entity" within the meaning of the ADA. *See* 28 C.F.R. § 35.130(b)(6) ("A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability"); *see also Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1171-73 (9th Cir. 2002) ("medical licensing clearly falls within the scope of Title II"); *Colo. State Bd. of Med. Examiners v. Ogin*, 56 P.3d 1233, 1236 (Colo. App. 2002) (medical "board and its licensing activities are subject to ADA Title II"). Plaintiff alleges that the Board made a finding of disability and refused to provide him with reasonable accommodations. (Doc. 28 at 5-7.) The Board's revocation of Plaintiff's license, he concludes, was a discriminatory act based on his disability. (*Id.* at 6-7.) At this stage, the allegations in the complaint do not preclude Plaintiff's claim under the ADA against the State of New Mexico. Defendants' motion to dismiss is denied with respect to the ADA claims.

**B.     Defendants Khalsa and Parsons Are Protected by Absolute Immunity.**

Plaintiff may not bring any claims against Defendants Khalsa and Parsons under the ADA or § 1983, regardless of whether Plaintiff asserted the claims in his original or amended complaint.

6

This Court and the Tenth Circuit have already precluded Plaintiff from bringing these claims, and nothing has changed that would allow him to do so now. In the Memorandum Opinion and Order filed on September 15, 2003 in this case, I specifically held that Defendants Khalsa and Parsons were entitled to absolute immunity from Plaintiff's claims pursuant to Title II and § 1983 inasmuch as Plaintiff requested "damages and injunctive relief. . . ." (Doc. 18 at 8-9.) The Tenth Circuit affirmed this decision on April 19, 2006: "The district court properly granted absolute immunity for Parsons and Khalsa because they were serving in quasi-judicial and prosecutorial roles at the New Mexico Board of Medical Examiners' Hearing." *Guttman*, 446 F.3d at 1032. There is no need to repeat the same analysis I set forth in my previous opinion. (Doc. 18 at 6-9.) Defendants' motion is granted with respect to this issue; Defendants Khalsa and Parsons are not subject to suit under the ADA or § 1983.

C.  **Plaintiff's Claims for "False Data Bank Report" and for Defamation under § 1983 Are Dismissed.**

Plaintiff's defamation claim fails if he is bringing it under § 1983.[4] "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). "Defamatory statements published by state officials do not give rise to a cause of action for violation of due process under section 1983." *Weitzel v. Wilson*, No. 04-CV-115, 2006 WL 1409135, at *2 (D. Utah May 18, 2006) (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Weiner v. San Diego County*, 210 F.3d 1025, 1032 (9th Cir.2000)).

Nor does Plaintiff have a claim under the Health Care Quality Improvement Act of 1986,

---

[4] To the extent Plaintiff is bringing a state tort claim for defamation, I will address that claim in section IV.

7

42 U.S.C. § 11101-11152 ("HCQIA"). The HCQIA does not create a private right of action, and so Defendants' motion will be granted as to this count. *See Hancock v. Blue Cross-Blue Shield of Kan., Inc.*, 21 F.3d 373, 373-74 (10th Cir. 1994); *see also Doe v. U.S. Dep't of Health & Human Servs.*, 871 F.Supp. 808 (E.D. Pa 1994).

### D.  Conclusion.

Defendants' motion is granted in part in that I find Defendants Khalsa and Parsons are entitled to absolute immunity under the ADA and § 1983, and Plaintiff's claims for "false data bank report" and defamation under § 1983 are dismissed. Defendants' motion is denied in part in that Plaintiff has alleged sufficient facts to state a claim under the ADA.

## IV.  THE COURT WILL HEAR ORAL ARGUMENT ON TWO REMAINING ISSUES.

The balance of Plaintiff's claims fall into two categories: (1) Plaintiff brings claims pursuant to § 1983 for violations of his First Amendment, equal protection, and procedural due process rights; and (2) Plaintiff may be asserting a state tort claim for defamation. Because Defendants Khalsa and Parsons are entitled to absolute immunity for all of Plaintiff's § 1983 claims, the only remaining Defendant potentially liable for these claims is the State of New Mexico. The Court is concerned about whether the State is a proper defendant. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). With respect to the possible state tort claim for defamation, the Court is also concerned about whether any or all of the three Defendants are properly named in light of the New Mexico Tort Claims Act. N.M. STAT. § 41-4-1 to -27 (1978). For these reasons, the Court will reserve decision on Plaintiff's remaining claims. The Court will hold an in person motion hearing to allow the parties to present arguments on the above issues on

Wednesday, November 15, 2006 at 3:30p.m. (*See* Doc. 38.) The issues of res judicata and collateral estoppel may also be discussed at this hearing.

**WHEREFORE,**

**IT IS ORDERED THAT** Defendants' Motion to Dismiss (Doc. 29) is **GRANTED IN PART:** Defendants Khalsa and Parson are entitled to absolute immunity for all claims under the ADA and § 1983; Plaintiff's "false data bank report" claim brought pursuant to the HCQIA is dismissed; and Plaintiff's defamation claim brought pursuant to 42 U.S.C. § 1983 is dismissed.

**IT IS FURTHER ORDERED THAT** the Defendants' Motion to Dismiss is also **DENIED IN PART:** Plaintiff has alleged sufficient facts to assert a claim under Title II of the ADA.

**IT IS FURTHER ORDERED THAT** the remainder of Defendants' Motion to Dismiss will be heard at oral argument on **Wednesday, November 15, 2006 at 3:30p.m.** before the Honorable Leslie C. Smith at 200 E. Griggs, Las Cruces, NM 88001. The issues remaining are whether Plaintiff states a valid claim under § 1983 against the State of New Mexico, and whether Plaintiff states a valid state tort claim for defamation against any or all of the three Defendants.

**IT IS FURTHER ORDERED THAT** Defendants' motion to withdraw attorney (Doc. 35) will also be heard on November 15, 2006.

**IT IS SO ORDERED.**

LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE

Westlaw.

65 Fed.Appx. 238

Page 1

65 Fed.Appx. 238, 2003 WL 21008840 (C.A.10 (Utah)), 26 NDLR P 7
**(Cite as: 65 Fed.Appx. 238)**

C
Briefs and Other Related Documents
Kourianos v. Smith's Food & Drug Centers, Inc.C.A.10 (Utah),2003.This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
Christina KOURIANOS, Plaintiff-Appellant,
v.
SMITH'S FOOD & DRUG CENTERS, INC.; Art Henry, Defendants-Appellees.
No. 02-4094.

May 6, 2003.

Former employee brought Americans with Disabilities Act (ADA) hostile work environment discrimination and retaliation claims against her former employer. The United States District Court for the District of Utah entered summary judgment in favor of employer, holding that there was insufficient evidence to demonstrate that employee was either disabled or perceived as disabled. Employee appealed. The Court of Appeals, McKay, Circuit Judge, held that employee, who perceived herself as functioning normally and who cared for herself and her small child while working and attending college, did not suffer a substantial limitation in any major life activity as a result of her alleged anxiety and depression, and thus, she was not disabled.

Affirmed.
West Headnotes
**Civil Rights 78 ⊂⊃1218(3)**

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1218 Who Is Disabled; What Is Disability
                78k1218(3) k. Particular Conditions, Limitations, and Impairments. Most Cited Cases
    (Formerly 78k173.1)

Employee's alleged depression and anxiety did not cause her to suffer a substantial limitation in any major life activity, and thus, she was not "disabled" within meaning of Americans with Disabilities Act (ADA), where employee testified that she perceived herself as functioning normally in society, and that she felt that she was able to maintain good interpersonal relationships, care for herself and her small child, attend college part-time, and perform all of her job requirements satisfactorily. Americans with Disabilities Act of 1990, § 3(2), 42 U.S.C.A. § 12102(2).

*239 Loren M. Lambert, Midvale, UT, for Plaintiff-Appellant.
Steven C. Bednar, Sean A. Monson, Kathleen Weron Toth, Manning, Curtis, Bradshaw & Bednar, Salt Lake City, UT, for Defendants-Appellees.

Before HARTZ and McKAY, Circuit Judges, and BRORBY, Senior Circuit Judge.

**ORDER AND JUDGMENT[FN*]**

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.McKAY, Circuit Judge.

**1 This Americans with Disabilities Act ("ADA") hostile work environment discrimination and retaliation claim stems from Plaintiff-Appellant's former employment with Smith's Food & Drug Centers. The district court granted summary judgment in favor of Smith's, holding that there was insufficient evidence in the record to demonstrate that Appellant was either disabled or perceived as disabled for purposes of establishing that she was a qualified individual with a disability pursuant to the ADA. The district court did not address whether Appellant offered sufficient evidence of a hostile work environment since she failed to meet ADA threshold requirements. The court also dismissed Appellant's retaliation claim.

65 Fed.Appx. 238                                                                                                     Page 2
65 Fed.Appx. 238, 2003 WL 21008840 (C.A.10 (Utah)), 26 NDLR P 7
**(Cite as: 65 Fed.Appx. 238)**

On appeal, Appellant contends that the district court committed reversible error in concluding that she had not offered sufficient evidence demonstrating that her diagnosed depression and anxiety substantially limited the major life activity of "emotional stability." Appellant does not appeal the district court's holding that there is no evidence that she was regarded as being disabled by Smith's or that she had a record of disability as defined by the ADA. Appellant does not appeal the dismissal of her claim for retaliation.

The issue we must address is whether the district court erred in granting summary judgment to Smith's and in concluding that Appellant's deposition testimony categorically refuted her ADA claim that she suffered a substantial limitation of a major life activity arising out of her diagnosed depression and anxiety. Appellant's deposition testimony, relied on by the district court as refuting her claim, was that Appellant perceived herself as functioning normally in society and able to maintain good interpersonal relationships, care for *240 herself and her small child, attend college part-time, and perform all of her job requirements satisfactorily. Aplt.App. at 95-96, 100, 107-110, 132-37.

We review *de novo* a grant of summary judgment, viewing the evidence in a light most favorable to the non-moving party and applying the same legal standards as the district court. *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1252 (10th Cir.2001); *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir.1998).

An ADA claim requires a plaintiff, as a threshold matter, to show "that she is a qualified individual with a disability" as defined by the ADA. *Steele*, 241 F.3d at 1252 (internal quotations omitted). A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). Additionally, "the ADA demands that we examine exactly how [a plaintiff's] major life activities are limited by his [or her] impairment." *Steele*, 241 F.3d at 1253. We must determine the effect of the impairment on the life of the individual-that is, the effect of Appellant's alleged anxiety and depression on one or more of Appellant's major life activities.

**\*\*2** We agree with the district court that Appellant's deposition testimony conclusively establishes that she did not suffer a substantial limitation in any major life activity arising from her alleged depression and anxiety. The district court stated:
Plaintiff admits that she is able to meet all of the demands associated with caring for herself and her daughter. Plaintiff has testified that she generally is able to maintain friendships and interpersonal relationships. Plaintiff generally perceives herself as able to function normally in society. She is able to attend classes part time at College of Eastern Utah. From January 1997 until she quit in May, 1999, Plaintiff was able to perform her work as a checker and courtesy clerk at Smith's Price store, which included working with the public, checking groceries, making change, handling money, remembering codes, knowing departments, etc. Although Plaintiff gets anxiety attacks, and as a result she has trouble breathing which forces her to take a break from work, she testified that they only occur several times a year.

Aplt.App. at 284 (internal citations omitted).

Appellant argues that the district court improperly gave greater weight to the evidence of her overall functionality while ignoring the evidence of the permanency and severity of her depression and anxiety. She argues that the evidence reveals that she attempted suicide, washed her hands compulsively, suffered two failed relationships, was only able to maintain a "D" average in college, and was incapable of living independent from her parents. According to Appellant, this is evidence that she has a severe disability which affects the major life functions of forming conjugal relationships, socializing, and learning-in short, the major life function of maintaining emotional stability.

However, Appellant's counsel has offered no expert testimony that his client was unable to accurately perceive her own level of functioning. As such, it appears from the record that Appellant was capable of self-evaluation and that she was able to accurately perceive her own level of functioning. As the district

65 Fed.Appx. 238                                                                                                    Page 3
65 Fed.Appx. 238, 2003 WL 21008840 (C.A.10 (Utah)), 26 NDLR P 7
**(Cite as: 65 Fed.Appx. 238)**

court noted, Appellant testified that she perceived herself as functioning normally in society. She felt that she was able to maintain good interpersonal relationships, care for herself and her small child, attend college *241 part-time, and perform all of her job requirements satisfactorily. Aplt.App. at 95-96, 100, 107-110, 132-37. Additionally, Appellant's psychologist, Dr. Manwill, testified that "to a large extent ... she was capable" of "describ[ing] how she felt or what she could do." Aple. Supp.App. at 14-15.

Even if the evidence offered by Appellant supports her assertion that she had an impairment, it does not address the extent to which the alleged impairment substantially limited her in performing a major life activity. It is not sufficient for Appellant to demonstrate that she has an impairment and symptoms that arise from the impairment; she must also demonstrate how her impairment and symptoms substantially limit her in performing one or more major life activities. Appellant has not done this. There is nothing in the record to demonstrate that Appellant could not perform the functions and activities of daily life or that her impairment and symptoms substantially limited her functions and activities.

**3 Because Appellant has not established, as a threshold matter, that she was substantially limited in a major life activity,[FN2] we are not required to address the novel question of whether emotional stability can be a recognized ADA major life activity. We are also not required to address the effect of Appellant's failure to raise the major life activity of emotional stability argument at the district court level. We are reluctant to categorically refute an entire class of plaintiffs that all have distinctly different mental impairments that may or may not substantially limit a major life activity.[FN3]

> FN2. Even if we assume for the sake of argument that emotional stability is a recognized major life activity, Appellant has not established that she was limited in a substantial way as required by 42 U.S.C. § 12102(2).

> FN3. "We have not decided whether 'interacting with others' is a major life activity and there is a split among the circuits on the issue. Compare *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15 (1st Cir.1997), with *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234-1235 (9th Cir.1999)." *Steele*, 241 F.3d at 1253.

For the foregoing reasons, the decision of the district court is AFFIRMED.

C.A.10 (Utah),2003.
Kourianos v. Smith's Food & Drug Centers, Inc.
65 Fed.Appx. 238, 2003 WL 21008840 (C.A.10 (Utah)), 26 NDLR P 7

Briefs and Other Related Documents (Back to top)

• 02-4094 (Docket) (Jun. 12, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

141 Fed.Appx. 709
141 Fed.Appx. 709, 2005 WL 1581257 (C.A.10 (Colo.)), 30 NDLR P 188
**(Cite as: 141 Fed.Appx. 709)**

Page 1

C
Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
Bernard L. HUMBLES, Plaintiff-Appellant,
v.
Anthony J. PRINCIPI, Secretary, U.S. Department of Veterans Affairs, Defendant-Appellee.
No. 04-1218.

July 7, 2005.

**Background:** Federal employee filed action alleging that denial of promotion and increase in his workload was discriminatory, in violation of Title VII and Rehabilitation Act. The United States District Court for the District of Colorado entered summary judgment in favor of agency, and employee appealed.

**Holdings:** The Court of Appeals, Seymour, Circuit Judge, held that:

(1) agency's selection of another candidate for promotion was not discriminatory;

(2) agency's increase of employee's workload did not constitute "adverse employment action"; and

(3) employee was not disabled as result of his post-traumatic stress disorder (PTSD).

Affirmed.

West Headnotes

[1] Civil Rights 78 €—1135

78 Civil Rights
  78II Employment Practices
    78k1135 k. Promotion, Demotion, and Transfer. Most Cited Cases
Employer's denial of promotion to applicant was not discriminatory, and thus did not violate Title VII, where successful candidate was selected because he had close relationship with person who assisted selecting official. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights 78 €—1138

78 Civil Rights
  78II Employment Practices
    78k1138 k. Disparate Treatment. Most Cited Cases
Employer's increase of employee's workload did not constitute "adverse employment action" sufficient to support employee's Title VII claim, where employee failed to show that his workload increased in relation to other employees, or that others were granted pay increases while he was not. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights 78 €—1218(3)

78 Civil Rights
  78II Employment Practices
    78k1215 Discrimination by Reason of Handicap, Disability, or Illness
      78k1218 Who Is Disabled; What Is Disability
        78k1218(3) k. Particular Conditions, Limitations, and Impairments. Most Cited Cases
Federal employee was not disabled as result of his post-traumatic stress disorder (PTSD), for purposes of Rehabilitation Act, despite employee's claim that PTSD interfered with his sleep, memory, concentration, and ability to interact with others, absent showing that he suffered substantial limitation compared to general public. Rehabilitation Act of 1973, § 501, 29 U.S.C.A. § 791.

[4] Civil Rights 78 €—1218(4)

78 Civil Rights
  78II Employment Practices
    78k1215 Discrimination by Reason of Handicap, Disability, or Illness
      78k1218 Who Is Disabled; What Is Disability
        78k1218(4) k. Employment Qualifications, Requirements, or Tests. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Civil Rights 78 ⚖ 1225(3)**

78 Civil Rights
　78II Employment Practices
　　78k1215 Discrimination by Reason of Handicap, Disability, or Illness
　　　78k1225 Accommodations
　　　　78k1225(3) k. Particular Cases. Most Cited Cases

Federal agency was not required by Rehabilitation Act to accommodate employee's post-traumatic stress disorder (PTSD) by reducing or eliminating number of intakes he was required to perform, where intakes were essential functions of his job, and reallocation of work would have forced other employees to work harder. Rehabilitation Act of 1973, § 501, 29 U.S.C.A. § 791.

*710 John W. McKendree, Denver, CO, for Plaintiff-Appellant.
Jerry N. Jones, Kathleen L. Torres, Megan McDermott, Office of the United States Attorney, Frank Lopez, United States Attorney's Office, Denver, CO, for Defendant-Appellee.

Before SEYMOUR, PORFILIO and HARTZ, Circuit Judges.

## ORDER AND JUDGMENT[FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

SEYMOUR, Circuit Judge.
**1 Plaintiff Bernard L. Humbles sued his employer, Anthony J. Principi, Secretary of the United States Department of Veterans Affairs, for discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, and the Rehabilitation Act, 29 U.S.C. §§ 791 & 794(a). He appeals the district court's grant of summary judgment to defendant. We affirm.

Mr. Humbles, who works for the Denver Veteran's Affairs Medical Center (VA Center), alleges discrimination based on his African American and Native American heritage, and on the basis of a disability resulting from posttraumatic stress disorder (PTSD). The district court concluded that Mr. Humbles failed to establish the presence of any genuine issue of material fact under the *McDonnell Douglas* framework for claims of disparate treatment, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

We review a grant of summary judgment *de novo* and apply the same legal standard as the district court. *711 *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326. Once the movant establishes its initial burden of showing the absence of a material fact issue, the nonmovant "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir.1996)). An issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in its favor. *Id.* If no genuine issue of material fact is in dispute, we assess whether the district court correctly applied the substantive law. *Id.*

Mr. Humbles claims that he applied for a higher position at the VA Center in December 2000 and was not referred or promoted due to discrimination based on race and national origin. He also contends that his workload was discriminatorily increased in May 2001 without a corresponding pay increase. These claims, based on circumstantial evidence, are subject to the burden-shifting framework set forth in *McDonnell Douglas*. Under this framework, a plaintiff must first establish a *prima facie* case of discrimination.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

141 Fed.Appx. 709  
141 Fed.Appx. 709, 2005 WL 1581257 (C.A.10 (Colo.)), 30 NDLR P 188  
(Cite as: 141 Fed.Appx. 709)

Page 3

*Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1226 (10th Cir.2000), by showing: 1) he belongs to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) he was treated less favorably than others. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir.2004). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Kendrick*, 220 F.3d at 1226. If the defendant satisfies this showing, the plaintiff then must demonstrate that the defendant's justification is pretext for unlawful discrimination. *Id.*

**\*2** [1] The record supports the district court's conclusion that Mr. Humbles failed to satisfy his burden of establishing his employer's refusal to refer or promote him was due to his race or national origin. Even if he made a *prima facie* showing of intentional discrimination, the VA Center countered with the legitimate, nondiscriminatory reason that Mr. Humbles was not eligible for the position at issue. The position required a GS-11 grade level and that applicants had spent one year at the GS-9 level or its equivalent, but Mr. Humbles was classified at GS-7. Although he disputes his classification and claims he should have been classified at GS-9 instead, he concedes he did not previously appeal his classification. More importantly, as the district court noted, Mr. Humbles admitted that another candidate was preselected for the position because the candidate had a close relationship with a person who assisted the selecting official. This is a nondiscriminatory motive, which does not create an inference of discrimination. *See Neal v. Roche*, 349 F.3d 1246, 1249-53 (10th Cir.2003). A plaintiff's concession of a nondiscriminatory motive undermines the existence of pretext and extinguishes a Title VII claim. *See id.* at 1251-53; *see also Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir.1997).

[2] Mr. Humbles' Title VII discrimination claim based on an increased workload also fails. Although "an increased workload \*712 might constitute an adverse employment action in some circumstances," *Jones v. Barnhart*, 349 F.3d 1260, 1269-70 (10th Cir.2003), Mr. Humbles failed to show his workload increased in relation to other employees, or that others were granted pay increases while he was not. *See id.*; *Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir.2000). Moreover, the VA Center established a legitimate, nondiscriminatory reason for the increase. It is undisputed that another employee resigned, which increased the workload of the rest of the staff. Mr. Humbles did not proffer evidence of pretext to counter this showing.

He next claims that the failure to refer or promote him and the increased workload were due to disability discrimination. Mr. Humbles has PTSD, which he says interferes with his sleep, memory, concentration, and ability to interact with others. To establish a *prima facie* case, he must show that 1) he is disabled within the meaning of the law; 2) he is qualified, i.e., he can, with or without reasonable accommodation, perform the essential functions of the job; and 3) he was discriminated against due to his disability. *Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir.2000); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir.1999). To be disabled under the Act, he must show either that he has a physical or mental impairment that substantially limits one or more of his major life activities; he has a record of such impairment; or he is regarded as having such an impairment. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Mr. Humbles claims he satisfies the first and third definitions of disability.

**\*3** [3] Regarding his first argument, the district court noted that plaintiffs are generally required to show their limitations are substantial compared to the general public. *See Lusk v. Ryder Integ. Log.*, 238 F.3d 1237, 1240-41 (10th Cir.2001). Mr. Humbles failed to present any evidence that his sleep disturbances, which he claimed resulted in his getting four to five hours of sleep per night, presented a substantial limitation compared to the general public. Mr. Humbles' claims about his interactions with others, memory, and concentration suffered from the same shortcomings. Moreover, interactions with others and concentration have not been deemed major life activities by this circuit. *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254-55 (10th Cir.2001); *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1231 (10th Cir.1999). Mr. Humbles thus failed to show his impairment substantially limits a major life

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

141 Fed.Appx. 709                                                                                                                                                            Page 4
141 Fed.Appx. 709, 2005 WL 1581257 (C.A.10 (Colo.)), 30 NDLR P 188
**(Cite as: 141 Fed.Appx. 709)**

activity.

Mr. Humbles also contends the VA Center regarded him as having a disability because it perceived he was substantially limited in his ability to work and sleep. A plaintiff satisfies this definition only if the employer "entertain[s] misperceptions" related to the individual and his disability, such as those based on "myths, fears and stereotypes." See *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1132-33 (10th Cir.2003). We agree with the district court that Mr. Humbles presented no evidence that the VA Center held such misperceptions. Even if he had satisfied his initial burden, as discussed above, he did not make a satisfactory showing of pretext.

[4] Mr. Humbles also claims the VA Center failed to accommodate his disability. As part of his current position, he conducts intakes with veterans who themselves are suffering from PTSD. He alleges he requested that the number of intakes he was required to perform be reduced or eliminated as an accommodation, but they were not. To succeed in his claim of failure to accommodate, he must establish not *713 only that he is disabled but also that he is "qualified" for the position in that he can perform the essential functions of his job and, if not, he must identify the reasonable accommodations that would enable him to do so. See *Wells*, 228 F.3d at 1144. As discussed above, Mr. Humbles did not establish he was disabled within the meaning of the Rehabilitation Act. The district court further concluded that even if he were disabled, he failed to create a genuine issue of material fact regarding a reasonable accommodation. Mr. Humbles concedes that the intakes are essential functions of his job, but suggests that a reasonable accommodation might involve reallocating the workload among other employees. An employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of a job. *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir.2001). In addition, an employer is not required to accommodate a disabled worker by reallocating work duties such that other employees are forced to work harder. See *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1121 n.3 (10th Cir.2004) (citing *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir.1995)). Upon review of the record and the relevant case law, we agree that Mr. Humbles did not establish a genuine issue of material fact regarding his *prima facie* case.

**\*\*4** Finally, Mr. Humbles contends the VA Center retaliated against him for his EEO activity. He claims the VA Center, among other retaliatory actions, failed to refer or promote him for the GS-11 position, increased his workload without additional salary, denied him monetary awards, and assigned him to a small office without a button that could be activated in case of emergencies. To succeed on his retaliation claim, he must make a *prima facie* showing that 1) he was engaged in protected opposition to discrimination; 2) he was subjected to an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse action. *Kendrick*, 220 F.3d at 1234. The causal connection may be demonstrated by setting forth "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.... In other words, [the plaintiff] must present some evidence that [the] employer undertook the adverse employment action for the purpose of retaliation." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320-21 (10th Cir.1999) (internal quotation omitted), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The district court concluded that Mr. Humbles merely made conclusory allegations in his pleadings about the first and third elements of his claim, which constituted insufficient evidence for summary judgment purposes under *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir.2002). Even if he had satisfied the first element of his claim, he has not raised any issues of material fact establishing a causal connection between any protected activity and the alleged adverse actions. In addition, he has proffered no evidence to demonstrate that the VA Center's actions were pretextual.

Having carefully reviewed Mr. Humbles' contentions and the record in this case, we **AFFIRM** the judgment of the district court for substantially the reasons set forth in its order dated May 7, 2004.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

141 Fed.Appx. 709  
141 Fed.Appx. 709, 2005 WL 1581257 (C.A.10 (Colo.)), 30 NDLR P 188  
**(Cite as: 141 Fed.Appx. 709)**

Page 5

C.A.10 (Colo.),2005.  
Humbles v. Principi  
141 Fed.Appx. 709, 2005 WL 1581257 (C.A.10 (Colo.)), 30 NDLR P 188

Briefs and Other Related Documents (Back to top)

• 2004 WL 2505707 (Appellate Brief) Appellant's Reply Brief (Oct. 05, 2004) Original Image of this Document (PDF)
• 2004 WL 3634638 (Appellate Brief) Appellant's Reply Brief (Oct. 05, 2004) Original Image of this Document (PDF)
• 2004 WL 3830619 (Appellate Brief) Appellee's Response Brief (Sep. 17, 2004)
• 2004 WL 2084981 (Appellate Brief) Appellant's Corrected Orening Brief (Aug. 04, 2004) Original Image of this Document (PDF)
• 2004 WL 3634639 (Appellate Brief) Appellant's Corrected Opening Brief (Aug. 04, 2004) Original Image of this Document with Appendix (PDF)
• 04-1218 (Docket) (May. 27, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 1409135 (D.Utah)
**(Cite as: Slip Copy)**

**Briefs and Other Related Documents**
Weitzel v. WilsonD.Utah,2006.Only the Westlaw citation is currently available.
United States District Court,D. Utah,Northern Division.
Robert WEITZEL, M.D., Plaintiff(s),
v.
Melvin WILSON, et al., Defendant(s).
**No. 04-CV-115.**

May 18, 2006.

Kathleen McConkie, Law Office of Kathleen McConkie, Bountiful, UT, for Plaintiff(s).
Joni J. Jones, Utah Attorney General's Office, Allan L. Larson, Heather S. White, Snow Christensen & Martineau, Salt Lake City, UT, for Defendant(s).

### ORDER ON DEFENDANT CHARLENE BARLOW'S MOTION TO DISMISS

WILLIAM F. DOWNES, District Judge.

*1 This matter comes before the Court on Defendant Charlene Barlow's Motion to Dismiss (Docket # 76). The Court, having considered the memorandum in support of the motion [FN1] and being otherwise fully advised, FINDS and ORDERS as follows:

   FN1. Plaintiff, proceeding pro se, did not file a response to this motion.

### Facts

The following facts are deduced from Plaintiff's Complaint and in some cases are based upon Plaintiff's failure to plead certain necessary facts.

1. Plaintiff generally alleges "a violation of his civil rights pursuant to, *inter alia*, the Due Process Clause of the United States Constitution and pursuant to 42 U.S.C. §§ 1983 and 1988." (Compl.¶ 1.)

2. Defendant Barlow was one of the attorneys who prosecuted state murder charges against Plaintiff Weitzel. (Compl.¶ 15.)

3. Plaintiff essentially alleges that Defendant Barlow caused a criminal information to be filed against him which led to his arrest, despite full knowledge that Plaintiff was not guilty of the crimes charged. *Id.* ¶ 6.

4. A preliminary hearing was held in late January and early February of 2000 which concluded in a finding of probable cause and an order that Plaintiff stand trial on five felony murder charges. *See id.* ¶ 7.

5. Plaintiff further alleges that Barlow and others "failed to divulge" certain exculpatory and impeaching evidence to Plaintiff or his defense counsel during the prosecution of his case. *Id.* ¶ 11.

6. Plaintiff further alleges that Barlow and others gathered medical records as part of the criminal discovery process and provided the records to Plaintiff's counsel as discovery and later introduced the records in the criminal trial. In providing this discovery, Plaintiff alleges Barlow and others "left out three important documents from the medical charts" and "willfully and maliciously conspired to hide the existence of said photographs...." *Id.* ¶¶ 13, 14.

7. Plaintiff alleges that Defendant Barlow falsely and maliciously prosecuted Plaintiff on five counts of murder. *Id.* ¶ 15. Plaintiff further alleges that during the trial Defendant was aware that one of the jurors had perjured himself during *voir dire* examination, and that the same juror had a close relationship with a prosecution witness who was "extremely hostile" to Plaintiff. *Id.* ¶ 16. Plaintiff was convicted of two counts of manslaughter and three counts of negligent homicide. *Id.*

8. Plaintiff alleges that, following the trial judge's grant of a new trial, Defendant Barlow and others "maliciously re-filed first-degree murder charges ... despite Plaintiff's acquittal of first-degree murder charges in the first trial...." *Id.* ¶ 20.

9. Plaintiff alleges that, despite full knowledge of his lack of guilt, Barlow and others maliciously and falsely continued to prosecute Plaintiff through a second trial, in which he was acquitted of all charges. *Id.* ¶ 22.

10. Finally, Plaintiff alleges that Defendant Barlow

Slip Copy
Slip Copy, 2006 WL 1409135 (D.Utah)
(Cite as: Slip Copy)

Page 2

and others made "false and slanderous statements about Plaintiff to the press, public, and to members of Plaintiff's profession...." *Id.* ¶ 25.

### Standard Of Review

*2 In reviewing a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded factual allegations as true, and all facts and inferences must be construed in the light most favorable to the plaintiff. Such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Montgomery v. City of Ardmore*, 365 F.3d 926, 934 (10th Cir.2004). As a pro se litigant, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.*

### Discussion

"It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities 'intimately associated with the judicial ... process,' such as initiating and pursuing criminal prosecutions." *Pfeiffer, M.D. v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir.1991) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); and *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir.1990)). The Tenth Circuit has also recognized that a prosecutor's withholding of evidence is an action "intimately associated" with the judicial process. *See Robinson v. Volkswagenwerk A G*, 940 F.2d 1369, 1373 n. 4 (10th Cir.1991).

In this case, Plaintiff's allegations, taken as a whole, infer that Defendant Barlow failed to disclose information and documents in discovery and at trial, and that Barlow persisted in the false and malicious prosecution of Plaintiff. However, these are the types of decisions that are expressly within the protection of prosecutorial immunity as outlined above. Therefore, all such claims must be dismissed. Plaintiff's defamation claim also fails. The United States Supreme Court has held that "section 1983 imposes liability for violations of rights protected by the constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Defamatory statements published by state officials do not give rise to a cause of action for violation of due process under section 1983. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *See also Weiner v. San Diego County*, 210 F.3d 1025, 1032 (9th Cir.2000).

To the extent Plaintiff attempts to assert a separate state law claim for defamation against these Defendants, it must also be dismissed. To establish a claim for defamation, Plaintiff must show that (1) the defendant published the statements allegedly made; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages. *DeBry v. Godbe*, 992 P.2d 979, 982 (Utah 1999).

*3 Under the law of defamation, false and defamatory statements are not actionable if they are protected by a legal privilege. A number of legal privileges are recognized in circumstances where communication must be wholly open, frank, and unchilled by the possibility of defamation action. This is so even though the reputation of a person may be harmed by such statements....

To establish the judicial proceeding privilege, the statements must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceedings; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel.

*Id.* at 983 (internal quotations and citations omitted). Plaintiff has failed to allege facts sufficient to show the foregoing elements. Instead, even affording Plaintiff all reasonable inferences, the allegations contained in the complaint indicate that the allegedly false statements complained of were made during the course of the prosecution against Plaintiff by participants in that judicial proceeding. Plaintiff's conclusory allegations simply fail to state a claim upon which relief could be granted. THEREFORE, it is hereby

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1409135 (D.Utah)
(Cite as: Slip Copy)

Page 3

**ORDERED** that Defendant Charlene Barlow's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is DISMISSED as to this Defendant.

D.Utah,2006.
Weitzel v. Wilson
Slip Copy, 2006 WL 1409135 (D.Utah)

Briefs and Other Related Documents (Back to top)

• 2006 WL 419093 (Trial Motion, Memorandum and Affidavit) Response to Plaintiff's Objection to Defendant's ŸProposed" Order of Dismissal (Jan. 19, 2006) Original Image of this Document with Appendix (PDF)
• 2005 WL 2919017 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of United States' Motion to Dismiss Plaintiff's Defamation Claim (Oct. 7, 2005)
• 2005 WL 2919014 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Laura Dupaix's, Gail Oliver's and Bridget Romano's Motion for Summary Judgment (Aug. 31, 2005)
• 2005 WL 2918235 (Trial Pleading) Debbie Harry's Answer (Aug. 4, 2005)
• 2005 WL 2918239 (Trial Pleading) Bridget Romano's Answer (Aug. 4, 2005)
• 2005 WL 2918242 (Trial Pleading) Gail Oliver's Answer (Aug. 4, 2005)
• 2005 WL 2918245 (Trial Pleading) Laura Dupaix's Answer (Aug. 4, 2005)
• 2005 WL 2918248 (Trial Pleading) Del Mortensen's Answer (Aug. 4, 2005)
• 2005 WL 2918252 (Trial Pleading) J. Craig Jackson's Answer (Aug. 4, 2005)
• 2005 WL 2918255 (Trial Pleading) Irene Gayheart's Answer (Aug. 4, 2005)
• 2005 WL 2919011 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Charlene Barlow's Motion to Dismiss (Aug. 4, 2005)
• 2005 WL 2918224 (Trial Pleading) Gary bowen's Answer (Aug. 3, 2005)
• 2005 WL 1921400 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Elizabeth Bowman's Motion to Dismiss (Feb. 2, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 1921402 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Jan Graham's Motion to Dismiss (Feb. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 1921404 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of State of Utah's and Mark Shurtleff's Motion to Dismiss (Feb. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 1921396 (Trial Motion, Memorandum and Affidavit) Melvin Wilson, Gary McKean, and Steve Major's Memorandum in Support of Motion to Dismiss Complaint (Jan. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 1921395 (Trial Pleading) Answer of Defendants Joe Morrison, City of Layton, Utah, and City of Layton Police Department (Jan. 12, 2005) Original Image of this Document (PDF)
• 2004 WL 3463208 (Trial Pleading) Complaint (Aug. 17, 2004) Original Image of this Document (PDF)
• 1:04cv00115 (Docket) (Aug. 17, 2004)

END OF DOCUMENT