IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STUART T. GUTTMAN, M.D.,
        Plaintiff,

v.                                                           CV 03-0463 LCS/KBM

G.T.S. KHALSA, LIVINGSTON PARSONS,
and THE STATE OF NEW MEXICO,
        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted filed on March 6, 2007. (Doc. 59.) Pursuant to 28 U.S.C. § 636(c) and Federal Rules of Civil Procedure 73(b), the parties consented to have me serve as the presiding judge and enter final judgment. (*See* Docs. 2, 7.) After having meticulously considered the motion, briefs, and applicable law, the motion will be **GRANTED IN PART and DENIED IN PART**.

## PROCEDURAL BACKGROUND

For a summary of the procedural background prior to July 12, 2006, see the Memorandum Opinion and Order filed on October 17, 2006. (Doc. 39 at 1-3.) After Plaintiff filed his amended complaint on June 9, 2006, Defendants filed a motion to dismiss for failure to state a claim. (*See* Docs. 28-30.) In my October 17, 2006 Memorandum Opinion and Order, I reiterated that Defendants Khalsa and Parson are entitled to absolute immunity for all claims under the ADA and § 1983, I dismissed Plaintiff's "false data bank report" claim brought pursuant to the Health Care Quality Improvement Act, and I dismissed Plaintiff's defamation claim brought pursuant to 42 U.S.C. § 1983. (*See* Doc. 39 at 9.) I reserved decision on Plaintiff's remaining claims - those brought against the State of New Mexico pursuant to § 1983 for violations of Plaintiff's First

Amendment, equal protection, and procedural due process rights, and the state tort claim for defamation against all three Defendants.  (*Id.* at 8.)

Plaintiff moved the Court to reconsider its October 17, 2006 opinion.  (Doc. 41 at 6.)  In his motion to reconsider, Plaintiff clarified that Count V of his amended complaint was a "stigma plus" defamation claim under § 1983.  (*Id.* at 3-6.)  Further, Plaintiff explained that the individual Defendants may not be entitled to absolute immunity for such a claim.  (*Id.* at 6-7.)  After I heard the parties' arguments on this issue and the issues reserved in the previous opinion, I granted Plaintiff's motion to consider, dismissed the state tort claim for defamation against all three Defendants, and dismissed Plaintiff's § 1983 claims against the State to the extent Plaintiff was seeking any damages other than prospective injunctive relief.  (*See* Doc. 43 at 4.)

After my second opinion on Defendants' previous motion to dismiss, the claims that remain to be decided are as follows: (1) the claim brought under Title II of the ADA against the State only; (2) the § 1983 claims against the State only for prospective injunctive relief; and (3) the "stigma plus" defamation claim against all three Defendants.  (*Id.* at 3.)

Defendants filed a second motion to dismiss for failure to state a claim on March 6, 2007.  (Doc. 59.)  In their second motion to dismiss since Plaintiff's amended complaint, Defendants move the Court to dismiss the "stigma plus" defamation claim and the claim under Title II of the ADA.  (*Id.* at 1.)

## STANDARD OF REVIEW

In considering Defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6), I must assume as true all well-pleaded facts and must draw all reasonable inferences in favor of Plaintiff.  *See, e. g.*, *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  I

may not dismiss Plaintiff's cause of action for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks and citation omitted). "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.* (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). "It is not, however, proper to assume that [Plaintiff] can prove facts that [he] has not alleged or that the defendants have violated the . . . laws in ways [Plaintiff has not] alleged." *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

### I.  The Court Will Allow Defendants' Second Motion to Dismiss.

As an initial matter, the Court finds that Defendants' second motion to dismiss should be considered at this time in the interests of judicial economy. Plaintiff argues that because Defendants failed to raise the issue of absolute quasi-judicial immunity in their first motion to dismiss, they waived that defense pursuant to FED. R. CIV. P. 12(g). (Doc. 64 at 2-5.) Plaintiff is mistaken. "While Rule 12(g) requires most defenses raised under Rule 12 to be joined in one motion to preserve the ability to raise the defense, . . . Rule 12(g) expressly excludes from its

3

waiver provision the defenses listed in Rule 12(h)(2)."[1]  *Lindsey v. United States*, 448 F. Supp. 2d 37, 54-55 (D.D.C. 2006) (citing FED. R. CIV. P. 12(g)).  "Rule 12(h)(2) provides that '[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings [pursuant to Rule 12(c)], or at trial on the merits.'"  *Id.* at 55 (quoting FED. R. CIV. P. 12(h)(2)).  "Read together, Rules 12(g) and 12(h)(2) plainly indicate that a defense of failure to state a sustainable claim is not waived simply by the defendant's failure to include it in an initial 12(b) motion submitted to the Court."  *Id.*  Absolute quasi-judicial immunity and qualified immunity are affirmative defenses appropriately raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.[2]  *See, e.g.*, *Peterson v. Jensen*, 371 F.3d 1199, 1201-02 (10th Cir. 2004) (considering a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss).  Consequently, Defendants have not waived their right to challenge Plaintiff's

---

[1] Rule 12(g) reads:
    A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party.  If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

[2] Defendants suggest that the Court's subject matter jurisdiction hinges on the outcome of their claimed immunity defenses.  (Doc. 65 at 5.)  I disagree.  The Tenth Circuit has held that "[I]mmunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded . . . ."  *Yellen v. Cooper*, 828 F.2d 1471, 1476 n.1 (10th Cir. 1987) (internal quotation marks and citations omitted).  Moreover, both defenses may be waived if raised for the first time on appeal.  *See Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604-05 (10th Cir. 1994).  The United States Supreme Court has noted that the treatment of qualified immunity "as a threshold jurisdictional question" would lead to "an odd result . . . ."  *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 447 (1999) (discussing removal cases under 28 U.S.C. § 1443) (citations omitted).  Defendants mistakenly cite to several cases involving sovereign immunity, which is often treated as "a jurisdictional limit courts must consider *sua sponte*."  *Nelson v. Geringer*, 295 F.3d 1082, 1098 n.16 (10th Cir. 2002) (citation omitted).  But sovereign immunity, which "is a constitutional limitation on the federal judicial power[,]" is a much different creature than absolute or qualified immunity.  *Id.* (internal quotation marks and citation omitted).  From the cases cited above, it is clear to me that the affirmative defenses of absolute and qualified immunity do not affect this Court's subject matter jurisdiction.

complaint on the grounds that they are entitled to either absolute quasi-judicial immunity (on behalf of the State for the Title II claim) or qualified immunity (on behalf of the individual Defendants for the "stigma plus" defamation claim).[3] *See Lindsey*, 448 F. Supp. 2d at 54-55.

Thus the issue becomes whether it is appropriate to permit Defendants to file a second 12(b)(6) motion to dismiss, or whether Defendants should be forced to raise their affirmative defenses in a later motion, such as one for judgment on the pleadings or for summary judgment. As the *Lindsey* court notes, "[t]he weight of authority . . . 'confirms that Rule 12(g) normally bars successive pre-answer motions to dismiss . . . .'" *Id.* at 55 (quoting *Stoffels ex rel. SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006)). This bar "'extends to the three 'substantial defenses' listed in 12(h)(2), including failure to state a claim upon which relief can be granted under Rule 12(b)(6) . . . ." *Id.* (quoting *Stoffels*, 430 F. Supp. 2d at 647 (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1385; 2 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 12.23, at 12-29)).

---

[3] Plaintiff presents two additional arguments to support his assertion that Defendants have waived the defense of absolute quasi-judicial immunity. Neither have merit. First, Plaintiff maintains that because this case has been to the Tenth Circuit, the United States Supreme Court, and back down again, and because no court raised the issue of absolute quasi-judicial immunity *sua sponte*, that the issue is moot on this latest remand. (Doc. 64 at 2.) In other words, Plaintiff asserts that "since the court of appeals remanded the case . . . , that court must have somehow implicitly found no basis for" absolute quasi-judicial immunity. *Prison Legal News, Inc. v. Simmons*, 401 F. Supp. 2d 1181, 1188 (D. Kan. 2005). Plaintiff's "argument is without merit, as evinced by [his] failure to cite any authority for [his] proposition." *Id.* Rule 8(c) requires defendants to raise affirmative defenses in an answer, and in all of this case's long history, Defendants have never filed an answer. FED. R. CIV. P. 8(c). Consequently, Defendants are not precluded from raising the defense of absolute quasi-judicial immunity at this late date.
       Second, Plaintiff correctly points out that Defendants should have filed an answer within ten days of this Court's Memorandum Opinion and Order entered on November 17, 2006. (Doc. 64 at 4.) Plaintiff goes on to assert that because Defendants did not answer, they have waived the defense of absolute quasi-judicial immunity. (*Id.* at 4-5.) Plaintiff does not cite to, nor can the Court find, any authority for such a proposition. Defendants' failure to answer does not now preclude them from asserting the new defense of absolute quasi-judicial immunity.

But "'despite the weight of the authority, allowing consideration of a second 12(b)(6) motion to dismiss is not an entirely uncommon practice.'" *Id.* (quoting *Stoffels*, 430 F. Supp. 2d at 648). "[I]n a limited number of cases the district court has exercised its discretion to permit a second preliminary motion to present a Rule 12(b)(6) defense, although it was technically improper to do so."[4]  5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1385 (quoted in *Lindsey*, 448 F. Supp. 2d at 55 (citation omitted)).  "Courts are most likely to allow defendants to bring a second Rule 12(b)(6) motion in cases where 'the problem [Rule] 12(g) was designed to prevent – unnecessary delay – [is] not a concern.'" *Lindsey*, 448 F. Supp. 2d at 55 (quoting *Stoffels*, 430 F. Supp. 2d at 648 (internal citation omitted)). Courts have also reasoned that because "the objection [of failure to state a claim] is so basic and is not waived," *Strandell v. Jackson County, Ill.*, 648 F. Supp. 126, 129 (S.D. Ill. 1986), it may be proper to entertain a second motion to dismiss in order to narrow the scope of the issues and/or dispose of the merits of the case, thereby "expediting [the] resolution of the case . . . ." *Donnelli v. Peters Sec. Co.*, Civ. No. 02-691, 2002 WL 2003217, at *4 (N.D. Ill. Aug. 29, 2002) (quoted in *Lindsey*, 448 F. Supp. 2d at 56).

There is no evidence that Defendants intended to cause undue delay by filing their second motion to dismiss, and I believe deciding the merits of the motion will expedite the resolution of this case. While "[a] strict application of Rule 12(g) would result in the denial of Defendant[s'] second 12(b)(6) motion, . . . Rule 12(h)(2) would allow Defendant[s] to raise the defense of

---

[4] *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 23 (D.D.C. 2002)*; Fed. Express Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943 (D.C. Tenn. 1999); *Strandell v. Jackson County, Ill.*, 648 F. Supp. 126 (D.C. Ill. 1986); *Steele v. Stephan*, 633 F. Supp. 950 (D.C. Kan. 1986); *Thorn v. New York City Dep't of Social Servs.*, 523 F. Supp. 1193 (D.C.N.Y. 1981).

6

failure to state a claim" in a later motion "or at trial." *Lindsey*, 448 F. Supp. 2d at 56 (citation omitted). "Allowing Defendant[s'] second motion would simply permit consideration now of a defense that would otherwise be raised at a later stage . . .; for that reason, there are no dilatory effects created by considering the defense at this stage." *Id.* (citation omitted).

## II.     Stigma Plus Defamation Claim

Defendants allege that the "stigma plus" defamation claim fails as a matter of law, because Plaintiff cannot demonstrate that the defamation occurred in the course of terminating Plaintiff's employment. (Doc. 59 at 2-4.) As a result, Defendants claim, Defendants Khalsa and Parsons are entitled to qualified immunity from Plaintiff's stigma plus defamation claim. (*Id.*) I agree that the individual Defendants are entitled to qualified immunity for this claim.

### A.     Qualified Immunity Standard

"'Under the doctrine of qualified immunity, government officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006) (quoting *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005) (internal quotation omitted)). Defendants have raised a qualified immunity defense for Plaintiff's "stigma plus" defamation claim, and so "the burden shifts to the plaintiff to show that [Defendants are] not entitled to immunity." *Id.* (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). To meet his burden, "[P]laintiff must first assert a violation of a constitutional or statutory right and then show that the right was clearly established." *Id.* (citing *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996)). *See also Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). "A right is 'clearly established' if

Supreme Court or Tenth Circuit case law exists on point or if the 'clearly established weight of authority from other circuits' found a constitutional violation from similar actions." *Peterson*, 371 F.3d at 1202 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)). "Under this standard,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."

*Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) (internal citations omitted). "Once the plaintiff satisfies this initial two-part burden, the burden shifts to the defendant to show that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law." *Robbins*, 433 F.3d at 764 (citing *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1299 (10th Cir. 2004)).

**B.     Analysis**

**1.     Plaintiff has established the violation of a constitutional right.**

When determining whether a defendant is entitled to qualified immunity, the Court's "first inquiry must be whether a constitutional right would have been violated on the facts alleged . . . ." *Saucier v. Katz*, 533 U.S.194, 200 (2001). Here, Plaintiff asserts that Defendants Khalsa and Parsons violated his liberty interest by publishing defamatory statements in the October 3, 2001 report to the National Practitioner's Data Bank in conjunction with the revocation of Plaintiff's medical license. (Doc. 28 at 13-14; *see also* Doc. 59 at 3.) *See also Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726 (10th Cir. 2000). Plaintiff contends that the publication of these defamatory statements, made in the course of the revocation of his license, has foreclosed

8

future employment opportunities in New Mexico and elsewhere. (Doc. 64 at 13.)

Plaintiff relies on the Tenth Circuit decision in *Workman v. Jordan*, 32 F.3d 475 (10th Cir. 1994). In *Workman*, the Tenth Circuit held that in order to show a deprivation of a liberty interest, a plaintiff must establish that the statement at issue impugned the plaintiff's reputation, was false, occurred in the course of terminating plaintiff's employment or foreclosed other employment opportunities, and was published. *Workman*, 32 F.3d at 481. Plaintiff asserts that the statements at issue in this case were false and defamatory, were published, and have resulted in the foreclosure of employment opportunities. (Doc. 64 at 13-14.) Defendants argue that the foreclosure of employment opportunities is not enough to demonstrate the violation of a constitutional right – instead, they believe Plaintiff must prove that the statements were published in the course of terminating Plaintiff's employment. (Doc. 49 at 2-4.) Defendants cite to a footnote in a 2000 Tenth Circuit case in support of their argument. (Doc. 59 at 2-4 (citing *Renaud*, 203 F.3d at 728 n.1).) As explained in the next section, however, I believe the *Renaud* footnote is more relevant in a discussion about whether the law in this area was clearly established at the time of the conduct. I am hesitant to extend *Renaud* in a way that would overturn the holding of *Workman*. Additionally, when considering the initial *Saucier* inquiry of whether Plaintiff has established the violation of a constitutional right, the Court must look at the facts alleged "in the light most favorable to the party asserting the injury . . . ." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Accordingly, considering the facts in the light most favorable to Plaintiff, I find that Plaintiff has demonstrated a violation of his liberty

9

interest.[5]

## 2. Plaintiff has not demonstrated that the right he asserts was clearly established at the time of the conduct at issue.

Because Plaintiff has demonstrated the violation of a constitutional right, the next question becomes "whether the right was clearly established . . . ." *Saucier*, 533 U.S. at 200. "In an action under [§] 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized,

---

[5] Although not cited by Plaintiff, there is other Tenth Circuit authority that may support Plaintiff's position. The Tenth Circuit has noted that "'[t]he liberty interest that due process protects includes the individual's freedom to earn a living.'" *Setliff v. Mem'l Hosp. of Sheridan County*, 850 F.2d 1384, 1396 (10th Cir. 1988) (quoting *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972))). There is no doubt that Plaintiff's freedom to earn a living as a physician in New Mexico is now impossible after the State revoked his medical license.

In *Setliff*, the Tenth Circuit cited several additional cases which support the proposition that a liberty interest may be implicated where a professional's license is revoked by the state. *Id.* at 1396-97. For example, the Seventh Circuit has held that where a plaintiff was "not foreclosed from practicing law[,] . . . [and was] still a member in good standing of the Illinois Bar and thus [was] qualified to represent clients[,]" the plaintiff had not established a "stigma plus" defamation claim. *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir. 1987), *cert. denied*, 482 U.S. 929 (1987) (cited in *Setliff*, 850 F.2d at 1396). As the Tenth Circuit noted, "'[a] liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers.'" *Setliff*, 850 F.2d at 1396 (quoting *Goulding*, 811 F.2d at 1103 (internal citation and quotation marks omitted)). In this case, Plaintiff has demonstrated more than a mere blemish on his reputation, his medical license has been completely revoked.

The *Setliff* court also noted a case from the Ninth Circuit. *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976) (cited in *Setliff*, 850 F.2d at 1397). In *Stretten* the plaintiff, who was a physician, was dismissed from his position as a resident in a federally run hospital. *Id.* at 363. Stretten brought suit against the hospital and others, alleging that the defendants violated his liberty interest in connection with the dismissal. *Id.* at 363, 365-66. Relying on *Roth*, the Ninth Circuit clarified that the Supreme Court's decision in *Paul v. Davis* did not foreclose Stretten's liberty interest claim. *Id.* at 365 (citing *Paul*, 424 U.S. 693 (1976); *Roth*, 408 U.S. at 573). The court noted that Stretten's claim was different from the plaintiff in *Paul*, because whereas the *Paul* plaintiff suffered only damage to his reputation, Stretten "suffered a tangible loss in being dismissed from his residency." *Id.* (citing *Paul*, 424 U.S. 693). The Ninth Circuit found no infringement of Stretten's liberty interest, however, on grounds that are unrelated to the issue in this case. *Stretten*, 537 F.2d at 366. Here, Plaintiff has also suffered a tangible loss in having his medical license revoked. These cases, together with *Workman*, are persuasive authority for the conclusion that Plaintiff has established the violation of a constitutional right.

10

and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 202 (quoting *Anderson*, 483 U.S. at 640). Further, "[i]n order for the law to be clearly established, 'there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" *Murrell*, 186 F.3d at 1251 (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

Defendants argue they are entitled to qualified immunity, because the clearly established law in the Tenth Circuit requires plaintiffs to establish that the defamation alleged in a "stigma plus" claim occurred in the course of termination of employment. (Doc. 59 at 2-4.) The Tenth Circuit has established a four-part test "that a plaintiff must satisfy to demonstrate a deprivation of liberty . . . ." *Renaud*, 203 F.3d at 727 (citing *Workman*, 32 F.3d at 481).

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.

*Workman*, 32 F.3d at 481 (citations omitted) (quoted in *Renaud*, 203 F.3d at 727). Defendants argue that Plaintiff cannot satisfy the third element of the *Workman* test. (*See* Doc. 65 at 6-7.) Because Plaintiff "had no employment relationship with the State of New Mexico, Mr. Khalsa, or Dr. Parsons[,]" Defendants argue that the revocation of Plaintiff's medical license was not equivalent to a termination of Plaintiff's employment. (Doc. 65 at 7.) Plaintiff does not dispute this fact. Defendants maintain that the relevant Tenth Circuit law "'clearly requires that the defamation occur in the course of <u>terminating</u> the plaintiff's employment.'" (Doc. 59 at 3 (citing

11

*Renaud*, 203 F.3d at 728 n.1).)

Plaintiff emphasizes the disjunctive nature of *Workman*'s third element: "the statements must occur in the course of terminating the employee *or* must foreclose other employment opportunities." *Workman*, 32 F.3d at 481 (citations omitted) (emphasis added). (*See also* Doc. 64 at 12-13.) Plaintiff argues that the third part of the *Workman* test is satisfied, because the defamatory statements Defendants made during the revocation proceedings have foreclosed any opportunities for Plaintiff to work as a physician. (Doc. 64 at 13.) Consequently, Plaintiff maintains that he has satisfied the four-part *Workman* test.

The third prong of the *Workman* test is disjunctive on its face: the plaintiff must demonstrate that the defamation occurred in the course of the termination of plaintiff's employment *OR* the defamation foreclosed other employment opportunities. *Workman* 32 F.3d at 481 (citations omitted). There is case law, however, which demonstrates this prong may not be disjunctive. The cases discussed below tend to show that a "stigma plus" defamation claim must arise out of the termination of a public employee.

The "stigma plus" defamation claim originated in the case of *Paul v. Davis*. 424 U.S. 693 (1976). In *Paul*,

> the plaintiff's photograph was included by local police chiefs in a "flyer" of "active shoplifters," after petitioner had been arrested for shoplifting. The shoplifting charge was eventually dismissed, and the plaintiff filed suit under 42 U.S.C. § 1983 against the police chiefs, alleging that the officials' actions inflicted a stigma to his reputation that would seriously impair his future employment opportunities, and thus deprived him under color of state law of liberty interests protected by the Fourteenth Amendment.

*Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (citing *Paul*, 424 U.S. 693). In rejecting the plaintiff's claim, the Court relied on its decision in *Bd. of Regents of State Colls. v. Roth*, 408

12

U.S. 564 (1972), noting that "it was not thought sufficient to establish a claim under [§] 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment." *Paul*, 424 U.S. at 710.

The Supreme Court reiterated this termination requirement in *Siegert*, 500 U.S. 226. In *Siegert*, the plaintiff resigned from his position with a federal hospital (St. Elizabeths) after learning that the hospital officials were "preparing to terminate his employment." *Siegert*, 500 U.S. at 227-28. The plaintiff was later given limited duties at and ultimately terminated from a second job, allegedly because of negative reports his former supervisor at St. Elizabeths shared with the second employer. *Id.* at 228-29. Siegert sued his former supervisor from St. Elizabeths, alleging that his loss of employment and inability to find comparable work because of the negative reports constituted a deprivation of his liberty interest. *Id.* at 232. The Court held that the facts alleged were insufficient to state the deprivation of a liberty interest, in part because Siegert had not been terminated from St. Elizabeths – he had resigned. *Id.* at 233-35. Because Siegert had failed to even establish the violation of a constitutional right, the defendant was entitled to qualified immunity. *Id.* at 233.

The Tenth Circuit has also emphasized the importance of establishing termination from government employment in a "stigma plus" defamation claim. "[T]he genesis of the liberty interest claim is action taken by a public employer against a public employee." *Melton v. City of Oklahoma City*, 928 F.2d 920, 930 (10th Cir. 1991). Citing to *Paul*, the *Melton* court went on to state, "stigmatization without a punitive action against a public employee will not violate a protected liberty interest." *Id.* (citing *Paul*, 424 U.S. at 710). The Tenth Circuit was more adamant about a termination requirement in a footnote to a more recent case. In *Renaud*, the

13

Tenth Circuit explained that *Workman*'s third prong is not disjunctive:

> Under the test formulated in *Workman*, 32 F.3d at 481, the defamatory statements "must occur in the course of terminating the employee *or must foreclose other employment opportunities*" (emphasis added). At first blush, it appears that this prong of the test can be met either by statements made in the course of terminating an employee or, in the alternative, by any other statements that might foreclose other employment opportunities. *Workman*, which was decided on other grounds, did not examine this question. In delineating this prong of the test, *Workman* cited *Paul*, 424 U.S. at 710, 96 S. Ct. 1155, and *Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir.1987). As explained in the foregoing analysis, *Paul* clearly requires that the defamation occur in the course of the termination of employment. *Sullivan* did not abrogate or minimize this requirement. While the language of *Workman* may be susceptible to another reading, we conclude that the *Workman* court did not intend to create a test under which a liberty interest might be infringed by any defamatory statement that might foreclose future employment opportunities.

*Renaud*, 203 F.3d at 728 n.1.

Plaintiff argues unconvincingly that the Tenth Circuit's decision in *Renaud* "does not stand for the proposition the Defendants assert." (Doc. 64 at 12.) Plaintiff also relies heavily on case law from other circuits to support his position. (*Id.* at 10-11.) Plaintiff's arguments are unavailing.[6] For example, Plaintiff relies on *Ersek v. Township of Springfield*, 102 F.3d 79, 83-84

---

[6] Plaintiff also argues that Defendants knowingly violated "clearly established" New Mexico state statutes and the Health Care Quality Improvement Act. (Doc. 64 at 6-8.) It appears Plaintiff believes that any alleged violations of these extraneous statutes support his argument that the law related to his "stigma plus" defamation claim was clearly established. Plaintiff is mistaken. These statutes are irrelevant to what a "reasonable official would understand" about conduct that violates the right at issue in a "stigma plus" claim. *See Saucier*, 533 U.S. at 202 (internal quotation marks and citation omitted). As such, the Court will not consider Plaintiff's arguments on the inapplicable statutes.

Furthermore, Plaintiff argued in his brief and at the motion hearing that the Board's failure to "designate three licensed health care providers to be members of [the] examining committee" voided all of the actions taken by the committee. (Doc. 64 at 8 (quoting NMSA 1978 § 61-7-4 (1995)); *see also* Doc. 76.) Plaintiff has cited no authority that directly supports this theory. Plaintiff does rely on *Lopez v. New Mexico Bd. of Med. Examiners*, 754 P.2d 522 (N.M. 1988) to substantiate his claim. *Lopez* is distinguishable for at least two reasons. First, the statute at issue in *Lopez* was NMSA 1978 § 61-1-13, which has nothing to do with the licensing requirement of board members. *Lopez*, 754 P.2d at 522. Second, the plaintiff in *Lopez* properly brought his claim regarding the state statute in state court. *Id.* Here, Plaintiff has never raised the licensing issue prior to his response to this motion to dismiss. And to my knowledge, Plaintiff failed to raise this issue in the state court proceedings several years ago. The licensing issue is completely unrelated to Plaintiff's current federal claims and is not properly

14

(3d. Cir. 1996). The *Ersek* court, however, specifically noted that "it is not clear whether" plaintiffs must establish "termination or discharge" in a "stigma plus" defamation claim. *Ersek*, 102 F.3d at 83 n.5. The court did not have to decide that question in *Ersek*, though, because it was not at issue. *Id.* And, in fact, the *Ersek* court upheld the lower court's grant of qualified immunity to the defendants. *Id.* at 85. Plaintiff also cites to a Seventh Circuit case and a New York state case, but fails to mention that the plaintiffs in both cases had been terminated by their government employers. (Doc. 64 at 11 (citing *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997); *In re Swinton*, 720 N.E.2d 89 (N.Y. Ct. App. 1999)).)

While there does not have to be a case directly on point to show that the law was clearly established, Plaintiff must show "'that in light of pre-existing law the unlawfulness [was] apparent.'" *Murrell*, 186 F.3d at 1251 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1398 (internal citation omitted)). Here, there are cases which seem to suggest that the foreclosure of future employment opportunities is sufficient to meet the third prong of the "stigma plus" test. *See, e.g.*, *Setliff*, 850 F.2d at 1396-97. On the other hand, the Tenth Circuit's *Renaud* decision was the law on point immediately prior to the conduct at issue.[7] *See* 203 F.3d 723. In *Renaud*, the Tenth Circuit very clearly stated plaintiffs are *required* to show that defamatory statements were made in the course of terminating employment for purposes of "stigma plus"

---

cognizable by this Court. To the extent Plaintiff now moves for permission to amend his complaint yet again to add such a claim, his motion is denied.

    Additionally, during the motion hearing on this matter, it appeared that Plaintiff may have also moved for reconsideration of the Court's prior decision that the individual defendants enjoy absolute immunity for certain claims. Plaintiff believes this decision should be reconsidered in light of his argument that the board was without jurisdiction to revoke Plaintiff's medical license. I do not agree with Plaintiff for the reasons discussed in this footnote, and to the extent Plaintiff did so move for reconsideration, that motion is denied.

[7] The allegedly defamatory report at issue here was published on October 3, 2001, and the *Renaud* decision was issued on February 8, 2000. (*See* Doc. 59 at 3.)

claims. *Id.* at 728 n.1. Regardless of whether *Workman*'s third prong is disjunctive or not, the foregoing cases demonstrate that "'[t]he contours of the right [are not] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 202 (quoting *Anderson*, 483 U.S. at 640).

Plaintiff has failed to show that the law in this area is clearly established. Defendants could not have known that their conduct was unlawful in the factual situation alleged. *See id.* Consequently, Defendants are entitled to qualified immunity for purposes of the "stigma plus" defamation claim. Furthermore, Plaintiff cannot maintain this § 1983 "stigma plus" claim against the State of New Mexico, because the State is not a "person" under § 1983.[8] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Defendants' motion to dismiss is granted with respect to this issue.

### III.   ADA Claim

Defendants argue that Plaintiff's Title II claim fails as a matter of law, because the State is protected by absolute quasi-judicial immunity. (Doc. 59 at 4-12.) Plaintiff argues that the State is not entitled to the defense. (Doc. 64 at 17-23.) Because I do not feel it is appropriate to extend the defense of absolute quasi-judicial immunity to the State for purposes of this ADA claim, I will deny Defendants' motion on this issue.

Defendants cite several cases to support their position, but the cases are all distinguishable. (Doc. 59 at 4-12.) For example, Defendants rely on a 1966 Washington case,

---

[8] Defendants now claim that because the individual defendants are entitled to qualified immunity for the "stigma plus" claim, the State of New Mexico is not liable for prospective injunctive relief under § 1983. (*See* Doc. 65 at 2-3.) The parties did not brief this issue, and I decline to rule on it now. Consequently, the issue of whether the State is liable for prospective injunctive relief under Plaintiff's § 1983 claims remains to be decided.

16

*Creelman v. Svenning*, 410 P.2d 606 (Wash. 1966).  In *Creelman*, the court held that where a county prosecutor enjoys quasi-judicial immunity from a malicious prosecution suit, public policy dictates that the state and county are entitled to the same type of immunity.  *Creelman*, 410 P.2d at 607-08.  The *Creelman* decision is not helpful here both because it lacked any significant analysis, and because it did not deal with the ADA.  *See id.*  Defendants also rely on a 2000 case from the District of Colorado, *Villescas v. Richardson*, 124 F. Supp. 2d 647 (D. Colo. 2000), *rev'd on other grounds*, *Villescas v. Abraham*, 311 F.3d 1253 (10th Cir. 2002).  The *Villescas* court held that where an Assistant United States Attorney enjoys quasi-judicial immunity from suit under Title VII, the ADEA, and the Privacy Act, the Department of Justice, as the agent of the attorney,  "is also entitled to absolute immunity."  *Villescas*, 124 F. Supp. 2d at 655-56.  Again, however, the court failed to provide any significant legal analysis for its conclusion, nor does the case concern Title II of the ADA.  *See id.*  In fact Defendants cite to no case, nor can the Court find a case, that extends the defense of absolute quasi-judicial immunity to the State in the context of a Title II claim.  The Court declines to extend the defense in such a manner without any precedent on point, from the Tenth Circuit or elsewhere.  Accordingly, Defendants' motion will be denied on this issue.

**IV.     Conclusion**

Defendants' motion is granted in part in that I find Plaintiff has failed to demonstrate that the law was clearly established with respect to his "stigma plus" claim.  Consequently, Defendants Khalsa and Parsons are entitled to qualified immunity for purposes of Plaintiff's "stigma plus" claim.  Because the parties did not brief the issue of whether the State is liable for prospective injunctive relief under Plaintiff's § 1983 claims, that issue is reserved for another day.

Defendants' motion is denied in part in that the State is not entitled to quasi-judicial immunity for purposes of the ADA claim.[9]

**WHEREFORE,**

**IT IS ORDERED THAT** Defendants' motion to dismiss (Doc. 59) is **GRANTED IN PART:** Defendants Khalsa and Parson are entitled to qualified immunity for the "stigma plus" claim.

**IT IS FURTHER ORDERED THAT** the Defendants' motion to dismiss is also **DENIED IN PART:** the State of New Mexico is not entitled to quasi-judicial immunity for purposes of the ADA claim.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] At the motion hearing on this matter, the Court asked the parties if they were now ready to brief the issue for which the Tenth Circuit remanded this case in April, 2006. *See Guttman v. Khalsa*, 446 F.3d 1027, 1036 (10th Cir. 2006). Defendants informed the Court that they do not desire to go down that path at this time. Plaintiff believes that the issues in the Tenth Circuit's opinion have already been decided.